# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HENRY ARMSTRONG, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-3028-LMA-SS** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Henry Armstrong, Jr. ("Armstrong"), seeks judicial review, pursuant to Section

405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner") denying his claims for disability insurance benefits

and  supplemental security income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 416,

423, 1382(a)(3).

## PROCEDURAL HISTORY

On August 25, 2010, Armstrong submitted applications for benefits.  He was born in 1946.

He alleged that he became unable to work on March 30, 2008.  R. 122-135.  He reported that his

right knee was injured during Hurricane Katrina.  He had a knee replacement.  R. 162.  On

December 10, 2010, the disability examiner determined that he was not disabled.  R. 47-48.  He did

not meet the duration requirement.  R. 53 and 57.  He was notified that his applications for benefits

were denied.  R. 69-72.  On June 23, 2011, there was a hearing before an Administrative Law Judge

("ALJ").  R. 19-46.  At the hearing, Armstrong's motion to amend the onset date to April 14, 2010,

was granted.  Rec. doc. 44-45.  Armstrong was represented by counsel at the hearing.  R. 19.  On

July 8, 2011, the ALJ issued an unfavorable decision.  R. 7-15.  On October 23, 2012, the Appeals

Council denied the request for review. R. 1-6. On December 21, 2011, Armstrong filed a complaint

for review. Rec. doc. 1. The parties filed cross-motions for summary judgment. Rec. docs. 11 and

12.

## STATEMENT OF ISSUES ON APPEAL

**Issue no. 1.**   Did the ALJ apply the proper legal standard when determining Armstrong's credibility?

**Issue no. 2**.   Did the ALJ apply the correct legal standard when assessing whether Armstrong's impairments would last at least 12 months and whether the finding is supported by substantial evidence?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.    Armstrong met the insured status requirements of the Act through April 30, 2012.

2.    Armstrong had not engaged in substantial gainful activity since April 14, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 et seq. and 416.971 et seq.).

3.    Armstrong has the following medically determinable impairments: bilateral osteoarthritis, hypertension, hyperlipidemia and status-post total right knee replacement (20 C.F.R. §§ 404.1521 et seq. and 416.921 et seq.).

4.    Armstrong does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, Armstrong does not have a severe impairment or combination of impairments (20 C.F.R. §§ 404.1521 et seq. and 416.921 et seq.).

5.    Armstrong has not been under a disability, as defined in the Act, from March 30, 2008,[1] through the date of this decision (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

R. 16-23.

_____

[1] Although the ALJ refers to March 30, 2008, at the hearing the onset date was amended to April 14, 2010. R. 44-45.

## **ANALYSIS**

a.      **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[2]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

---

[2]  The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry.  Id.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing.  Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989).  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."  Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history."  Perez v. Barnhart, 415 F.3d at 462.  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.    **Testimony at the Hearing.**

Armstrong lived in New Orleans.  R. 25.  He was 65 years old at the time of the hearing.  He was six feet four inches and weighed about 260 pounds.  R. 25.  He had finished high school.  R. 26.

Armstrong had worked as a merchant seaman.  He began as a messman and became chief steward.  R. 26.  He took vocational courses in cooking.  R. 26.  After the merchant marine, he worked as a banquet waiter.  R. 27.  Each banquet function began with bare tables.  The waiters set the tables with the silverware, crockery and the like.  They carried ten entrees at a time weighing 10 to 15 pounds to a table.  R. 27.

Armstrong developed pain in his right knee over a period of time.  R. 27.  During Hurricane Katrina he was in over 9 feet of water.  He helped his mother and grandchildren to the Claiborne overpass.  He injured his leg in the storm.  R. 27-28.  He lived in Houston from 2005 to 2008.  R.

28.  In 2006, he tried to work at the Hyatt Regency in Houston as a banquet waiter.  He stopped to care for his mother and because of the injury to his leg.  R. 28.

Armstrong stopped working after he began receiving Social Security benefits.  R. 28.  He went back to work as a banquet waiter at the Monteleone hotel in September 2010 for four days, but his right knee swelled almost "as big as his head."  R. 28-29.

Armstrong's knee felt restricted.  He could not run for the bus.  He walked with a cane.  At times his right knee throbbed with pain.  R. 30.  The cane was prescribed.  R. 32.  His blood pressure was under control.  R. 30.  His primary care doctor was at Daughters of Charity.  R. 31.  Medication was prescribed for hypertension, cholesterol and pain.  R. 31.  After his knee replacement surgery, He received physical therapy.  R. 32.

During a typical day, he ate and sat around.  R. 32.  He could not go on long walks.  R. 33. He could walk 6 to 8 blocks.  R. 34.  He could not play sports.  R. 33.  After standing for about 20 to 25 minutes, he needed to sit down.  R. 33-34.  He could only sit for about 30 to 45 minutes before his leg became numb.  R. 34.  He could go down stairs, but could not climb more than a couple flights of stairs before he had to rest.  R. 35.

He tried not to lie down during the day, but sometimes he did.  R. 36.  He could not return to work as a banquet waiter because of the amount he had to carry to the tables.  The walking and lifting requirements were too much for him.  R. 37.  He experienced some dizziness whenever he took a pill for his blood pressure.  R. 37.  The pain medication helped, but he tried not to take Vicodin because it "whoozes" him.  R.38.

In response to the ALJ's hypothetical question, the vocational expert testified that there was work available to Armstrong including work as a banquet waiter.  R. 41-42.  If he had to lie down

6

for more than half an hour during an eight hour workday, he could not perform his past work or any other work on a consistent basis.

Armstrong's motion to amend the onset date to April 14, 2010 was granted.  R. 44-45.

c.      **Medical Evidence**.

On January 14, 2010, Armstrong was seen at the Medical Center of Louisiana - New Orleans ("Medical Center") with complaints of right knee pain.  He reported injuring it in Hurricane Katrina. Fluid had been removed in Texas.  There was swelling in the right knee.  R. 283.  A January 16, 2010 x-ray of the right knee revealed degenerative changes with mild spurring. R. 287.

On April 14, 2010, Armstrong was seen at the Daughters of Charity ("DOC") by Dr. Coleman Pratt for pain in his right knee.  R. 275.  On April 28, 2010, he returned to Dr. Pratt for a blood pressure check.  R. 274.  On May 24, 2010, he was seen at DOC by Nurse Practitioner Lynette Collins for right knee pain.  R. 274.  On July 9, 2010, he was seen at DOC by Dr. Sarat Raman for right knee pain.  The x-ray revealed mild degeneration.  R. 273.  On August 5, 2010, he returned to Dr. Pratt.  The medication was renewed.  R. 272-73.

On September 10, 2010, Armstrong was seen at Tulane Medical Center ("Tulane") for preoperative evaluation for right knee replacement.  R. 251.  On October 1, 2010, Armstrong was admitted to Tulane for right knee total arthroplasty.  R. 233.  The surgeon was Dr. Charles Billings. R. 234.  Before his discharge on October 5, 2010, he was up, ambulatory and making progress with a walker.  R. 265.  The final diagnosis was degenerative joint disease (osteoarthritis).  R. 256.

On November 4, 2010, Armstrong was seen at DOC by Nurse Practitioner Collins.  The hypertension was well-controlled.  The right knee showed no sign of infection.  There was some swelling.  There were good peripheral pulses distal to knee.  R. 272.

On November 17, 2010, Armstrong was seen by Dr. Miljana Mandich, an internist, for a consultative examination.  Armstrong was in physical therapy following the knee replacement surgery and using a walker.  The right knee measured two inches more in circumference than the left.  He could not fully extend or flex the right knee.  He used a walker.  The rest of the examination was unremarkable.  R. 226-230.

On November 29, 2010, Armstrong was seen by Dr. Billings, his surgeon, for a follow-up on the knee surgery.  He was to concentrate on extension exercises.  A cane was prescribed.  He was to take Vicodin as needed.  Physical therapy was renewed for 6 weeks with home therapy thereafter.  He was to return in 3 months.  He remained "restricted in activities and capable of returning to former level of gainful employment on a permanent basis."  R. 279.

On January 30, 2011, Armstrong went to the Medical Center emergency room for dental treatment.  He was balancing his grandchildren when he tripped and fell.  He complained of painful lips and a left upper tooth.  Plates in his mouth were broken in the fall.  He denied "loss of consciousness or trauma elsewhere, specifically in his neck."  Although the history referred to the knee replacement, there was no mention of pain in the knee.  R. 285.

On February 7, 2011, Armstrong was seen at DOC by Nurse Practitioner Collins.  The medication was renewed.  R. 270-71.

d.      **Plaintiff's Appeal.**

**Issue no. 1.**      Did the ALJ apply the proper legal standard when determining Armstrong's credibility?

Armstrong contends that the ALJ did not follow the correct legal standard when assessing his credibility.  Rec. doc. 12 (Memorandum at 6).  Armstrong acknowledges that although the ALJ provided some reasons why she did not give credibility to Armstrong's statements concerning the

intensity, persistence, and limiting effects of his impairments, the ALJ failed to employ the correct legal standard when finding that his statements were not considered credible.  Id. at 6.

Armstrong notes that first, the ALJ must determine whether the case record contains underlying medically determinable physical or mental impairments that could reasonably be expected to produce Armstrong's pain or other symptoms.  Id.  The ALJ's decision recognizes this as the first step.  R. 13.  The ALJ found that Armstrong's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  R. 14.

The ALJ and Armstrong agree that in the next step, the ALJ must evaluate the intensity, persistence and limiting effects of Armstrong's symptoms to determine the extent to which the symptoms limit his ability to do basic work activities.  Rec. doc. 12 (Memorandum at 9); R. 13; and SSR 96-7p, 1996 WL 374186, *2.

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Id.  The ALJ found that Armstrong's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding he has no severe impairment or combination of impairments. . . ."  R. 14.

Armstrong argues that his testimony and statements to his medical providers are consistent with and substantiated by the objective medical evidence of record.  Therefore the ALJ was required to accept them and factor them into the analysis of residual functional capacity.  Rec. doc. 12 at 10.

The issue is whether there is substantial evidence to support the finding that Armstrong's

testimony and statements to medical providers are inconsistent with the finding that he did not have a severe impairment or combination of impairments.  The ALJ noted that:  (1) Armstrong's hypertension was well controlled with prescribed medication; (2) his current joint pain was non-severe and unrelated to his prior knee pain and resulting surgery; (3) the right knee surgery was generally successful in relieving his symptomology; (4) continued improvement was expected within 12 months; (5) there were no medical opinions indicating that he is disabled; and (5) no additional surgery, PT or pain management was planned.  There is substantial evidence to support these findings.

On November 4, 2010, it was noted that his hypertension was well-controlled.  R. 272. Armstrong testified that his blood pressure was under control.  R. 30.

On February 7, 2011, Armstrong was seen at DOC by Nurse Practitioner Collins.  R. 270-71. He was there to follow-up on this blood pressure and cholesterol.  The notes do not reflect any report of pain in either knee.  Id.  When he went to the ER at the Medical Center after he fell, he did not report any pain in his knees.  R. 285.  Armstrong's post surgery knee pain or "current pain" was non-severe and unrelated to his prior knee pain.

The ALJ described the October 1, 2010 surgery as generally successful.  On November 29, 2010, Armstrong was seen by his surgeon, who noted that Armstrong was restricted in activities but capable of returning to his former level of gainful employment on a permanent basis.  R. 279. Armstrong was to return by about March 1, 2011.  Although the hearing before the ALJ was not until June 23, 2010 and a decision was not issued until July 8, 2011 (R. 7 and 19), there are no further reports from the surgeon.  There is substantial evidence to support the findings that there

were no medical opinions indicating that he is disabled and no additional surgery, PT or pain

management was planned.

The ALJ applied the correct legal standard in evaluating Armstrong's credibility.  There is

substantial evidence to support the findings associated with Armstrong's credibility.

**Issue no. 2**.    Did the ALJ apply the correct legal standard when assessing whether Armstrong's
impairments would last at least 12 months and whether the finding is supported by
substantial evidence?

Armstrong contends that there is substantial medical evidence demonstrating that he suffered

from severe impairments for the 12 month period.  Rec. doc. 12 (Memorandum at 11).  The

Commissioner correctly notes that Armstrong does not challenge whether the ALJ applied the

correct legal standard.  Instead Armstrong argues that substantial evidence does not support the

ALJ's conclusion.

> [I]f an individual's impairment has lasted or can be expected to last for a continuous
> period of twelve months and is either included in a list of serious impairments in the
> regulations or is medically equivalent to a listed impairment, he or she is considered
> disabled without consideration of vocational evidence.

20 C.F.R. §§ 404.1520(d), 416.920(d).  The ALJ found that:  (1) Armstrong's then current joint pain

was unrelated to his prior knee pain; (2) the knee replacement surgery occurred on October 1, 2010;

within 12 months of the ALJ's July 8, 2011 decision; and (3) continued medical improvement from

the surgery was anticipated.  R. 14.

Prior the October 1, 2010 surgery, Armstrong reported pain in his right knee on January 14,

2010.  There was swelling and an x-ray revealed degenerative changes.  R. 283 and 287.  On April

14, May 24 and July 9, 2010, Armstrong reported pain in his right knee with swelling.  R. 273-75.

On September 9, 2010, Armstrong decided to proceed with the elective knee surgery because of the

failure of conservative measures.  R. 251.  The surgery was performed on October 1, 2010.  The

sutures were removed on October 14, 2010.  R. 254.  On November 4, 2010, the right knee showed no sign of infection, there was some swelling and there were good peripheral pulses distal to the knee.  R. 272.  On November 29, Dr. Billings noted that Armstrong was to concentrate on extension exercises, a cane was prescribed, pain medication was prescribed, physical therapy was renewed for 6 weeks with home therapy thereafter and he was to return in 3 months.  He remained "restricted in activities and capable of returning to former level of gainful employment on a permanent basis."  R. 279.

There are no further reports of Armstrong seeing Dr. Billings.  When he sought emergency dental treatment after a fall, he did not report any knee pain.  R. 285.  He did not report any right knee pain on February 7, 2011, about four months after the surgery.  R. 270-71.  There is substantial evidence to support the ALJ's finding that Armstrong's post-surgery pain in his right knee was unrelated to the prior knee pain which prompted the surgery.

Based on the November 29, 2010 report by Dr. Billings, there is substantial evidence for the ALJ's finding that continued medical improvement from the surgery was anticipated.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 12) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 11) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 17th day of September, 2016.

**SALLY SHUSHAN**
**United States Magistrate Judge**

13